**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

| | | |
|---|---|---|
| **ELIZABETH L. PERRIS**<br>BANKRUPTCY JUDGE | 1001 S.W. FIFTH AVENUE, # 700<br>PORTLAND, OREGON 97204<br>(503) 326-1536 | DIANE K. BRIDGE, LAW CLERK<br>MATTHEW MERTENS, LAW CLERK |

December 18, 2014

Mr. Tim Mouraveiko
5006 SW Pomona St
Portland, OR 97219

Mr. Johnston Mitchell
Coers Mitchell Law LLC
2100 NE Broadway Street, Suite 105
Portland, OR 97232

      Re: <u>Mouraveiko v. Moglia</u>, Adv. Pro. 11-3306-elp

          Letter Ruling on Plaintiff's March 10, 2014, Motion for
          Sanctions Pursuant to the Court's Inherent Power

Dear Gentlemen:

    The purpose of this letter is to rule on the Motion for Sanctions filed by Tim Mouraveiko ("plaintiff"), the plaintiff in the above-captioned adversary proceeding. Plaintiff has moved for sanctions against Daniel K. Le Roux ("respondent"), the former attorney for James Moglia ("debtor"), based on the court's inherent power. Plaintiff argues that respondent alleged a meritless elder abuse claim against him in multiple forums and did so in bad faith.

    The court denied plaintiff's motion for sanctions pursuant to Rule 9011 and 11 U.S.C. § 105(a) on May 12, 2014 (ECF No. 110). The parties submitted briefing on the inherent power sanctions issue, and the court held a two-day evidentiary hearing on July 9, 2014, and August 1, 2014. The parties then submitted additional briefing in support of their respective positions.

    After considering the briefing, the evidence presented at the hearings, the fact that the Washington County Circuit Court awarded attorney fees in connection with the elder abuse claim submitted to it, and for the reasons set forth below, I decline to award further sanctions based on the court's inherent power.

PROCEDURAL HISTORY AND BRIEF FACTS

Plaintiff filed suit in 2010 in Multnomah County Circuit Court (the "Multnomah County action") against debtor, his former business partner. Respondent filed an answer on debtor's behalf that included, *inter alia,* a counterclaim for financial elder abuse. The state court dismissed the counterclaim on procedural grounds because it was filed too close to the trial date.

Debtor filed his chapter 13 petition shortly thereafter, which stayed proceedings in the Multnomah County action. Plaintiff then filed this adversary proceeding objecting to debtor's discharge and seeking a determination that debtor's debts to plaintiff should be excepted from debtor's discharge if one was granted. This court confirmed debtor's chapter 13 plan in October 2011; in November 2011, respondent filed on debtor's behalf an answer to plaintiff's adversary complaint, in which debtor asserted once more the elder abuse counterclaim. Many of plaintiff's claims in this adversary proceeding and in the Multnomah County action overlapped. Plaintiff moved to lift the automatic stay and continue litigation in Multnomah County in order to (1) prosecute some of the claims alleged in this adversary proceeding, and (2) liquidate a portion of his claim in debtor's bankruptcy case. This court granted plaintiff's motion for relief from stay at a hearing in December 2011 ("December hearing").

In January 2012, respondent filed on debtor's behalf a lawsuit in Washington County Circuit Court (the "Washington County action"). The sole claim advanced was the elder abuse claim. Plaintiff moved for judgment on the pleadings. Respondent argued in response that there was no duplicative claim pending in the bankruptcy case because "Judge Perris released all claims that James Moglia had against Defendant Mouraveiko to be pursued in civil court, and, as discussed below, once the chapter 13 plan was confirmed, all property (including this claim) vested in the debtor. 11 U.S.C. § 1327(b)." Pl.'s Ex. 7 at 2:18-20.

Respondent did not appear at the hearing on plaintiff's motion for judgment on the pleadings in the Washington County action. The court granted plaintiff's motion and dismissed the Washington County action. It subsequently entered a supplemental judgment against debtor for plaintiff's attorney fees because the elder abuse claim lacked an objectively reasonable basis. Pl.'s Ex. 4 at 2. Debtor appealed only the supplemental judgment for attorney fees, which has been affirmed.

One issue during the sanctions hearing was why respondent had failed to appear for the hearing in the Washington County action. He explained that he had moved firms shortly before the Washington County hearing, and his co-counsel, Mr. Lackey, had failed to notify him of the hearing. Hr'g Tr. 124:1-9, July 9, 2014. Respondent also explained that there was no appeal of the Washington County action's dismissal because Mr. Lackey would not provide a declaration explaining why he had not notified respondent of the hearing. Hr'g Tr. 126:11-15. Without this declaration, respondent thought that the appellate court was unlikely to find excusable neglect and reverse the dismissal. Id.

LEGAL ANALYSIS

1. Standard for sanctions based on a court's inherent power

In order to achieve the expeditious disposition of cases, a federal court has the inherent power to discipline attorneys that appear before it. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Before awarding sanctions under its inherent powers, a court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997). A finding of "bad faith" is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. Id. at 649. Sanctions can be awarded for an attorney's conduct before other tribunals, such as disobeying a sanctioning court's orders, and need not be limited to conduct occurring in the sanctioning court's presence. Chambers, 501 U.S. at 57. However, at least one court has decided against imposing sanctions on an attorney for misconduct arising primarily in other cases when the complained-of conduct had already been sanctioned in another case. Del Nero v. Midland Credit Mgmt., 2010 WL 1227453 at *3 (C.D. Cal. Mar. 30, 2010).

The bad faith requirement sets a high threshold for a court to use its inherent authority to sanction. Primus, 115 F.3d at 649. Because of their potency, a court should resort to its inherent powers with "restraint and discretion." Chambers, 501 U.S. at 44. Sanctions are reserved for the "rare and exceptional" case where an action is clearly frivolous, legally unreasonable, or brought for an improper purpose. Primus, 115 F.3d at 649. Courts have recognized that even arguments that clearly lack merit may not be sanctionable, as forceful

representation often calls for innovative arguments. <u>Id.</u> Before assessing sanctions, a court should consider that sanctions may deter future parties from pursuing colorable claims. <u>Id.</u> at 650.

2.  <u>Analysis of respondent's conduct</u>

Plaintiff has not met his high burden of proving that respondent acted in bad faith. He makes three arguments in favor of sanctioning respondent: (1) the elder abuse claim, as pleaded in all three actions, was plainly meritless because there were no facts to support one of the elements; (2) respondent misrepresented aspects of the bankruptcy case in the Washington County action; and (3) respondent filed the Washington County action solely to harass plaintiff. The court does not find any of these arguments sufficiently persuasive to justify sanctions pursuant to the court's inherent power.

1.  <u>The elder abuse claim was not argued in bad faith</u>

Plaintiff argues that respondent presented the elder abuse claim in all three actions in bad faith because there were no facts to support a "taking or appropriation" of debtor's property as required by the statute. Oregon Revised Statutes § 124.110(a) defines the four elements of financial elder abuse: there must be (1) a taking or appropriation; (2) of money or property; (3) that belongs to a vulnerable person; and (4) the taking must be wrongful. The ability to bring a tort action is a property interest. <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 430 (1982). The surrender of a possibly meritless claim which is disputed in good faith is a legal detriment. <u>Murphy v. T. Rowe Price Prime Reserve Fund, Inc.</u>, 8 F.3d 1420, 1423 (9th Cir. 1993).

Respondent alleged several "takings" in the Multnomah County action: that plaintiff induced debtor to transfer real property that debtor owned to plaintiff's wife; that debtor paid plaintiff substantial sums of money under the terms of a release signed by both parties; and that debtor released his potential claims against plaintiff, but plaintiff kept his potential claims against debtor. Hr'g Tr. at 113:9-17; 116:15-18; 146:13-24, July 9, 2014. In the adversary proceeding, respondent further alleged that plaintiff took intellectual property belonging to plaintiff and debtor's joint venture. Hr'g Tr. at 117:19-23.

Two of the allegations of takings are clearly without merit. First, plaintiff's uncontroverted testimony at the August 1, 2014, hearing was that debtor never made payments to plaintiff as

contemplated by the release. Second, the allegation that plaintiff took intellectual property belonging to plaintiff and debtor's joint venture is not an allegation that plaintiff took debtor's property.

However, the allegations regarding the transfer of debtor's real property to plaintiff's wife and the release of debtor's potential claims were at least somewhat plausible bases for the "taking or appropriation" required by the statute. The only Oregon case addressing whether the transfer of a real property interest is a "taking," Church v. Woods, does not foreclose the possibility that a defendant might be liable for inducing a vulnerable person to transfer property to a third party. See 190 Or. App. 112, 117-118 (2003). Respondent's argument that plaintiff's alleged inducement of debtor's real property transfer to plaintiff's wife was a "taking" was at least a plausible basis for the claim.

As for respondent's argument that the release of debtor's potential claims was a taking, it is beyond dispute that a lawsuit or potential lawsuit is property. So long as their legitimacy is disputed in good faith, a party's release of even ultimately meritless claims is a legal detriment to the party. Plaintiff argued at length that debtor's purported release of potential claims against plaintiff could not be a "taking." At the August 1 hearing, he pointed to the fact that debtor lost on his intentional interference with economic relations and conversion counterclaims in the Multnomah County action, so in reality, debtor released nothing of value. But this outcome does not render respondent's argument frivolous *ex ante* that the release of potential claims was at least possibly a taking.

Respondent testified that, prior to filing the elder abuse counterclaim, he reviewed documents related to the claim, consulted with other attorneys, and believed that the counterclaim had a good faith basis in law and fact. Hr'g Tr. at 130:15-131:6. Respondent was unequivocally incorrect on the merits of the claim: in dismissing the Washington County action, the court held that the elder abuse claim had "no objectively reasonable basis." Pl.'s Ex. 4 at 2.

Notwithstanding this holding, inherent power sanctions on the basis of the elder abuse claim are still inappropriate for several reasons. First, as discussed above, I do not find that respondent knowingly or recklessly raised a frivolous argument. Respondent was ultimately wrong on the merits; however, I find

that he was not acting in bad faith and that he subjectively believed that his arguments were colorable. Second, not every frivolous argument is appropriate for sanctions. The Primus court cautioned that forceful representation can require innovative arguments, even ones that are ultimately without merit, and that sanctions can deter future colorable claims. I find that respondent's arguments were not so frivolous that they must have been raised in bad faith. Third, Del Nero suggests that sanctions may not be appropriate in this case. The Multnomah County Circuit Court dismissed the elder abuse claim without prejudice because of timing: the elder abuse claim was added too close to the Multnomah County trial date. This made a second filing of the elder abuse claim reasonable. Respondent incorrectly thought that the second filing, in the bankruptcy court, had been effectively dismissed through confirmation of the plan. The third filing, in Washington County, has already resulted in sanctions. The Del Nero court declined to sanction an attorney under its inherent power when, as in this case, another court had already sanctioned the complained-of conduct. Furthermore, plaintiff has the option of recovering his appellate attorney fees from respondent as well. These considerations weigh against a finding that this is the "rare and exceptional" case that warrants inherent power sanctions.

   2.   Respondent's misrepresentations regarding the status of the bankruptcy proceedings are not a basis for inherent power sanctions

Respondent made two misrepresentations during the Washington County action: (1) that there was no duplicative elder abuse claim pending in the bankruptcy proceeding; and (2) that Judge Perris had released all of debtor's claims against plaintiff to be pursued in state court. After consideration of the testimony and arguments at the hearing, neither misrepresentation is grounds for sanctions.

Respondent's misrepresentations stemmed from a misunderstanding of this court's ruling at the December hearing. The court ruled that certain claims would be tried in the Multnomah County action, and the remaining claims in the adversary proceeding would be abated pending that action's outcome. The court did not rule that the elder abuse counterclaim could be tried in state court rather than in the adversary proceeding. There was no elder abuse counterclaim pending in the Multnomah County action because it had been dismissed, so there was nothing to send back to state court. The

following discussion of the counterclaim took place at the December hearing:

> THE COURT: Well, property is revested in the debtor, correct, as a result of confirmation?
> MR. KUNI: Correct.
> THE COURT: So the debtor actually is the owner of these counterclaims at this point?
> MR. KUNI: That's correct.
> THE COURT: So the debtor's free to pursue the counterclaims as part of claim litigation?
> MR. KUNI: I believe so.

Hr'g Tr. at 29:20-30:3, December 21, 2011.

> THE COURT: And you can do the state court matters first and we'll see what's left.
> MR. MOURAVEIKO: So, can we abate these proceedings until we're finished at state court?
> THE COURT: Right. And that's what we're going to do, is we're just going to set a status conference out, oh, maybe four months from now.
> MR MOURAVEIKO: Okay.
> THE COURT: So we can see what the state court decided and what it didn't decide.

Hr'g Tr. at 41:2-41:11, December 21, 2011.

Respondent testified that, following the December hearing, he understood that the counterclaim had vested back in debtor as a result of the confirmation order, and he further understood that the adversary proceeding had been abated. Hr'g Tr. at 137:31-138:6, July 9, 2014. He also testified that he consulted with Mr. Lackey and with Mr. Kuni, who is a bankruptcy attorney, each of whom confirmed his understanding. Id. It is true that the counterclaim was property that had revested in debtor upon confirmation pursuant to 11 U.S.C. § 1327(b). It is also true that the adversary proceeding had been abated pending resolution of the Multnomah County action. But respondent incorrectly surmised from these two facts that the elder abuse counterclaim was no longer pending in this court.

Armed with this misapprehension, respondent argued in the Washington County action that no duplicative claim was pending in bankruptcy court and that "Judge Perris released all claims that

[debtor] had against [plaintiff] to be pursued in civil court."
Pl.'s Ex. 7 at 2:18-20. There are two plausible interpretations
of these representations. The first is that respondent knowingly
and inappropriately invoked the authority of this court to lend
credibility to his elder abuse claim -- a claim that he knew was
still pending in bankruptcy court. The second is that respondent
mistakenly, but understandably, conflated the revesting of the
elder abuse claim via the mechanism of plan confirmation with the
action of "Judge Perris" during the December hearing, and that as
a non-bankruptcy lawyer, he was confused by the interplay of
§ 1327(b) and this court's ruling at the December hearing.

After considering all the testimony and other evidence, I
find that this second interpretation is more likely and thus
decline to sanction respondent on the basis of his
misrepresentations in the Washington County action. I find
credible respondent's testimony that he consulted with other
attorneys and believed that he had a good faith basis for filing
the elder abuse claim in a court other than the bankruptcy court.

Having said that, I admonish respondent that his conduct
related to filing and arguing the Washington County action was
subpar. Alleging that "Judge Perris released all claims . . . to
be pursued in civil court" was sloppy draftsmanship at best, and
it misrepresented to the state court the ruling of this court.
Furthermore, it is a given that provisions of the Bankruptcy
Code, such as § 1327(b)'s revesting mechanism and the effects of
relief from stay, can be complicated for the non-bankruptcy
practitioner. But respondent could have sought clarification in
this court if he was not certain of the effect of the December
hearing. Rather than seeking guidance from the bankruptcy court
on the status of the elder abuse counterclaim, he instead
multiplied the litigation into a third forum by filing the
Washington County action. In light of all the evidence, this
conduct, while leaving much to be desired, is not tantamount to
bad faith.

3. Respondent did not file the Washington County
action in bad faith to harass plaintiff

Plaintiff argued that respondent filed the Washington County
action in order to continue to "torment" him. As evidence, he
pointed to the fact that respondent failed to appear at the
hearing on plaintiff's motion for judgment on the pleadings --
supposedly because respondent knew that the claim was meritless.
However, respondent's explanation at the hearing for his failure

to appear was credible.  He testified that he had recently moved firms and that Mr. Lackey was lead attorney on the case. Hr'g Tr. at 124:1-9, July 9, 2014.  As a result, respondent did not directly receive notice of the hearing, and Mr. Lackey failed to pass the notice on to him.  Hr'g Tr. at 124:9.  Mr. Lackey informed respondent that he was not going to file the opposition to plaintiff's motion and that it would be respondent's responsibility.  Hr'g Tr. at 124:19-23.  Respondent prepared and filed the opposition on very short notice.  Id.  However, because he never received the hearing notice, he did not appear at the hearing.  Respondent's Exhibit V shows that Mr. Lackey, not respondent, received the electronic hearing notice.

   Respondent's credible explanation rebuts plaintiff's argument that respondent's failure to appear for the hearing was evidence that the elder abuse claim was filed maliciously or in bad faith.  Given that respondent knew that Mr. Lackey was apparently unreliable and failing to keep abreast of the case, respondent should have taken affirmative steps to investigate whether a hearing had been set.  However, the Washington County court has already awarded sanctions in plaintiff's favor as a result of respondent's failure to appear: the elder abuse claim was dismissed with prejudice, and plaintiff was awarded his attorney fees.  Additional sanctions are not warranted on this basis.

## CONCLUSION

   Plaintiff testified convincingly that the elder abuse litigation negatively impacted his life in a multitude of ways, and this court is sympathetic to his circumstances. However, sanctions under the court's inherent authority should be levied with "restraint and discretion" and are reserved for the "rare and exceptional" case. Notwithstanding respondent's missteps, this is not that case.  Mr. Mitchell should submit the order denying inherent authority sanctions within 10 days of the date of this letter.

                                        Very truly yours,

                                        Elizabeth L. Perris
                                        Bankruptcy Judge