## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
MATTHEW MERTENS, LAW CLERK

February 17, 2015

Mr. Tim Mouraveiko
5006 SW Pomona St
Portland, OR 97219

Mr. Johnston Mitchell
Coers Mitchell Law LLC
2100 NE Broadway Street, Suite 105
Portland, OR 97232

> Re: <u>Mouraveiko v. Moglia</u>, Adv. Pro. 11-3306-elp
>
> Amended Letter Ruling on Plaintiff's March 10, 2014,
> Motion for Sanctions Pursuant to the Court's Inherent
> Power

Dear Gentlemen:

The purpose of this letter is to provide an amended ruling on the Motion for Sanctions filed by Tim Mouraveiko ("plaintiff"), the plaintiff in the above-captioned adversary proceeding. Plaintiff moved for sanctions ("Motion") against Daniel K. Le Roux ("respondent"), the former attorney for James Moglia ("debtor"), based on the court's inherent power. The court entered a letter ruling on the Motion, denying sanctions.

Plaintiff moved for reconsideration based on alleged errors in the ruling in the finding that the elder abuse claim was not argued in bad faith and that respondent's misrepresentations regarding the status of the bankruptcy proceedings are not a basis for inherent sanctions. The motion for reconsideration does not take issue with the court's conclusion that the Washington County court has already imposed attorney fees against respondent for the elder abuse claim, and so additional sanctions for filing that claim are not warranted.

After considering the motion for reconsideration, I have decided that the conclusion I reached, that no sanctions should be awarded, is correct, but that some of the findings I made should be corrected or omitted. Consequently, although I decline to award sanctions based on the court's inherent power, I enter this Amended Letter Ruling.

PROCEDURAL HISTORY AND BRIEF FACTS

Plaintiff filed suit in 2010 in Multnomah County Circuit Court (the "Multnomah County action") against debtor, his former business partner. Respondent filed an answer on debtor's behalf that included, *inter alia,* a counterclaim for financial elder abuse. The state court dismissed the counterclaim on procedural grounds because it was filed too close to the trial date.

Debtor filed his chapter 13 petition shortly thereafter, which stayed proceedings in the Multnomah County action. Plaintiff then filed this adversary proceeding objecting to debtor's discharge and seeking a determination that debtor's debts to plaintiff should be excepted from debtor's discharge if one was granted. This court confirmed debtor's chapter 13 plan in October 2011; in November 2011, respondent filed on debtor's behalf an answer to plaintiff's adversary complaint, in which debtor asserted once more the elder abuse counterclaim. Many of plaintiff's claims in this adversary proceeding and in the Multnomah County action overlapped. Plaintiff moved to lift the automatic stay and continue litigation in Multnomah County in order to (1) prosecute some of the claims alleged in this adversary proceeding, and (2) liquidate a portion of his claim in debtor's bankruptcy case. This court granted plaintiff's motion for relief from stay at a hearing in December 2011 ("December hearing").

In January 2012, respondent filed on debtor's behalf a lawsuit in Washington County Circuit Court (the "Washington County action"). The sole claim advanced was the elder abuse claim. Plaintiff moved for judgment on the pleadings. Respondent argued in response that there was no duplicative claim pending in the bankruptcy case because "Judge Perris released all claims that James Moglia had against Defendant Mouraveiko to be pursued in civil court, and, as discussed below, once the chapter 13 plan was confirmed, all property (including this claim) vested in the debtor. 11 U.S.C. § 1327(b)." Pl.'s Ex. 7 at 2:18-20.

Respondent did not appear at the hearing on plaintiff's motion for judgment on the pleadings in the Washington County action. The court granted plaintiff's motion and dismissed the Washington County action. It subsequently entered a supplemental judgment against debtor for plaintiff's attorney fees because the elder abuse claim lacked an objectively reasonable basis. Pl.'s Ex. 4 at 2. Debtor appealed only the supplemental judgment for attorney fees, which has been affirmed.

One issue during the sanctions hearing was why respondent had failed to appear for the hearing in the Washington County action. He explained that he had moved firms shortly before the Washington County hearing, and his co-counsel, Mr. Lackey, had failed to notify him of the hearing. Hr'g Tr. 124:1-9, July 9, 2014. Respondent also explained that there was no appeal of the Washington County action's dismissal because Mr. Lackey would not provide a declaration explaining why he had not notified respondent of the hearing. Hr'g Tr. 126:11-15. Without this declaration, respondent thought that the appellate court was unlikely to find excusable neglect and reverse the dismissal. Id.

LEGAL ANALYSIS

1. Standard for sanctions based on a court's inherent power

In order to achieve the expeditious disposition of cases, a federal court has the inherent power to discipline attorneys that appear before it. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Before awarding sanctions under its inherent powers, a court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997). A finding of "bad faith" is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. Id. at 649. Sanctions can be awarded for an attorney's conduct before other tribunals, such as disobeying a sanctioning court's orders, and need not be limited to conduct occurring in the sanctioning court's presence. Chambers, 501 U.S. at 57. However, at least one court has decided against imposing sanctions on an attorney for misconduct arising primarily in other cases when the complained-of conduct had already been sanctioned in another case. Del Nero v. Midland Credit Mgmt., 2010 WL 1227453 at *3 (C.D. Cal. Mar. 30, 2010).

The bad faith requirement sets a high threshold for a court to use its inherent authority to sanction. Primus, 115 F.3d at 649. Because of their potency, a court should resort to its inherent powers with "restraint and discretion." Chambers, 501 U.S. at 44. Sanctions are reserved for the "rare and exceptional" case where an action is clearly frivolous, legally unreasonable, or brought for an improper purpose. Primus, 115 F.3d at 649. Before assessing sanctions, a court should consider

that sanctions may deter future parties from pursuing colorable claims.  Id. at 650.

2.  Analysis of respondent's conduct

Plaintiff has not met his high burden of proving that sanctions should be imposed beyond those already imposed by the Washington County court.  Plaintiff makes three arguments in favor of sanctioning respondent: (1) that the elder abuse claim, as pleaded in all three actions, was plainly meritless because there were no facts to support one of the elements; (2) that respondent misrepresented aspects of the bankruptcy case in the Washington County action; and (3) that respondent filed the Washington County action solely to harass plaintiff.  The court does not find any of these arguments sufficiently persuasive to justify sanctions beyond those already imposed.

1.  The elder abuse claim

Plaintiff argues that respondent presented the elder abuse claim in all three actions in bad faith because there were no facts to support a "taking or appropriation" of debtor's property as required by the statute.  Oregon Revised Statutes § 124.110(a) defines the four elements of financial elder abuse: there must be (1) a taking or appropriation; (2) of money or property; (3) that belongs to a vulnerable person; and (4) the taking must be wrongful.  The ability to bring a tort action is a property interest.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982).  The surrender of a possibly meritless claim that is disputed in good faith is a legal detriment.  Murphy v. T. Rowe Price Prime Reserve Fund, Inc., 8 F.3d 1420, 1423 (9th Cir. 1993).

Respondent alleged that plaintiff entered into a contract with debtor that purported to transfer property that debtor owned to plaintiff's wife and that contained a one-sided release of claims.  Ex. D, ¶ 65.  The Answer and Counterclaim further alleges in paragraph 37, and plaintiff admits, that debtor and plaintiff entered into a January 15, 2010 agreement that contained a release.  Respondent further alleged that plaintiff took intellectual property belonging to the joint venture between plaintiff and debtor.  Ex. O, ¶ 82; Hr'g Tr. at 117:19-23.

The allegation that plaintiff took intellectual property belonging to the joint venture is not an allegation that plaintiff took debtor's property.  Thus, this allegation cannot support an elder abuse claim.

However, the allegation regarding alleged release by debtor
was at least a somewhat plausible basis for the "taking or
appropriation" required by the statute even if there is no
factual basis for the claim that there was a transfer of
property. It is beyond dispute that a lawsuit or potential
lawsuit is property. So long as their legitimacy is disputed in
good faith, a party's release of even ultimately meritless claims
is a legal detriment to the party. Plaintiff argued at length
that debtor's purported release of potential claims against
plaintiff could not be a "taking." At the August 1 hearing, he
pointed to the fact that debtor lost on his intentional
interference with economic relations and conversion counterclaims
in the Multnomah County action, so in reality, debtor released
nothing of value. But this outcome does not render respondent's
argument frivolous *ex ante* that the release of potential claims
was at least possibly a taking.

Respondent testified that, prior to filing the elder abuse
counterclaim, he reviewed documents related to the claim,
consulted with other attorneys, and believed that the
counterclaim had a good faith basis in law and fact. Hr'g Tr. at
130:15-131:6. Respondent was unequivocally incorrect on the
merits of the claim.

Nonetheless, inherent power sanctions on the basis of the
elder abuse claim are still inappropriate. Although respondent
was ultimately wrong on the merits, he subjectively believed that
his arguments were colorable and there was one somewhat plausible
basis for that claim. In addition, not every frivolous argument
is appropriate for sanctions. I find that respondent's arguments
were not so frivolous that they must have been raised in bad
faith.

Finally, <u>Del Nero</u> suggests that sanctions may not be
appropriate in this case for filing the elder abuse claim in
three courts. The Multnomah County Circuit Court dismissed the
elder abuse claim without prejudice because of timing: the elder
abuse claim was added too close to the Multnomah County trial
date. This made a second filing of the elder abuse claim
reasonable. Respondent incorrectly thought that the second
filing, in the bankruptcy court, had been effectively dismissed
through confirmation of the plan. The third filing, in
Washington County, has already resulted in sanctions. The <u>Del
Nero</u> court declined to sanction an attorney under its inherent
power when, as in this case, another court had already sanctioned
the complained-of conduct. Furthermore, plaintiff has the option

of recovering his appellate attorney fees from respondent as
well.  These considerations weigh against a finding that this is
the "rare and exceptional" case that warrants inherent power
sanctions.

> 2.  <u>Respondent's misrepresentations regarding the status of
> the bankruptcy proceedings are not a basis for inherent
> power sanctions</u>

Respondent made two misrepresentations during the Washington
County action: (1) that there was no duplicative elder abuse
claim pending in the bankruptcy proceeding; and (2) that Judge
Perris had released all of debtor's claims against plaintiff to
be pursued in state court.  After consideration of the testimony
and arguments at the hearing, I conclude that neither
misrepresentation is grounds for sanctions.

Respondent's misrepresentations stemmed from a
misunderstanding of this court's ruling at the December hearing.
This court ruled that certain claims would be tried in the
Multnomah County action, and the remaining claims in the
adversary proceeding would be abated pending that action's
outcome.  This court did not rule that the elder abuse
counterclaim could be tried in state court rather than in the
adversary proceeding.  There was no elder abuse counterclaim
pending in the Multnomah County action because it had been
dismissed, so there was nothing to send back to state court.  The
following discussion of the counterclaim took place at the
December hearing:

| | |
|---|---|
| THE COURT: | Well, property is revested in the debtor, correct, as a result of confirmation? |
| MR. KUNI: | Correct. |
| THE COURT: | So the debtor actually is the owner of these counterclaims at this point? |
| MR. KUNI: | That's correct. |
| THE COURT: | So the debtor's free to pursue the counterclaims as part of claim litigation? |
| MR. KUNI: | I believe so. |

Hr'g Tr. at 29:20-30:3, December 21, 2011.

>       THE COURT:      And you can do the state court matters first
>                       and we'll see what's left.
>
>       MR. MOURAVEIKO: So, can we abate these proceedings until
>                       we're finished at state court?
>
>       THE COURT:      Right.  And that's what we're going to do,
>                       is we're just going to set a status
>                       conference out, oh, maybe four months
>                       from now.
>
>       MR MOURAVEIKO:  Okay.
>
>       THE COURT:      So we can see what the state court decided
>                       and what it didn't decide.

Hr'g Tr. at 41:2-41:11, December 21, 2011.

Respondent testified that, following the December hearing, he understood that the counterclaim had vested back in debtor as a result of the confirmation order, and he further understood that the adversary proceeding had been abated.  Hr'g Tr. at 137:31-138:6, July 9, 2014.  He also testified that he consulted with Mr. Lackey and with Mr. Kuni, who is a bankruptcy attorney, each of whom confirmed his understanding.  Id.  It is true that the counterclaim was property that had revested in debtor upon confirmation pursuant to 11 U.S.C. § 1327(b).  It is also true that the adversary proceeding had been abated pending resolution of the Multnomah County action.  But respondent incorrectly surmised from these two facts that the elder abuse counterclaim was no longer pending in this court.

Armed with this misapprehension, respondent argued in the Washington County action that no duplicative claim was pending in bankruptcy court and that "Judge Perris released all claims that [debtor] had against [plaintiff] to be pursued in civil court." Pl.'s Ex. 7 at 2:18-20.  There are two plausible interpretations of these representations.  The first is that respondent knowingly and inappropriately invoked the authority of this court to lend credibility to his elder abuse claim -- a claim that he knew was still pending in bankruptcy court.  The second is that respondent mistakenly, but understandably, conflated the revesting of the elder abuse claim via the mechanism of plan confirmation with the action of "Judge Perris" during the December hearing, and that as a non-bankruptcy lawyer, he was confused by the interplay of § 1327(b) and this court's ruling at the December hearing.

After considering all of the testimony and other evidence, I find that this second interpretation is more likely and thus decline to sanction respondent on the basis of his misrepresentations in the Washington County action.  I find credible respondent's testimony that he consulted with other attorneys and believed that he had a good faith basis for filing the elder abuse claim in a court other than the bankruptcy court.

Having said that, I admonish respondent that his conduct related to filing and arguing the Washington County action was subpar.  Alleging that "Judge Perris released all claims . . . to be pursued in civil court" was sloppy draftsmanship at best, and it misrepresented to the state court the ruling of this court. Furthermore, it is a given that provisions of the Bankruptcy Code, such as § 1327(b)'s revesting mechanism and the effects of relief from stay, can be complicated for the non-bankruptcy practitioner.  But respondent could have sought clarification in this court if he was not certain of the effect of the December hearing.  Rather than seeking guidance from the bankruptcy court on the status of the elder abuse counterclaim, he instead multiplied the litigation into a third forum by filing the Washington County action.  In light of all the evidence, this conduct, while leaving much to be desired, is not tantamount to bad faith.

3. <u>Respondent did not file the Washington County action in bad faith to harass plaintiff</u>

Plaintiff argued that respondent filed the Washington County action in order to continue to "torment" him.  As evidence, he pointed to the fact that respondent failed to appear at the hearing on plaintiff's motion for judgment on the pleadings –– supposedly because respondent knew that the claim was meritless. However, respondent's explanation at the hearing for his failure to appear was credible.  He testified that he had recently moved firms and that Mr. Lackey was lead attorney on the case.  Hr'g Tr. at 124:1-9, July 9, 2014.  As a result, respondent did not directly receive notice of the hearing, and Mr. Lackey failed to pass the notice on to him.  Hr'g Tr. at 124:9.  Mr. Lackey informed respondent that he was not going to file the opposition to plaintiff's motion and that it would be respondent's responsibility.  Hr'g Tr. at 124:19-23.  Respondent prepared and filed the opposition on very short notice.  <u>Id.</u>  However, because he never received the hearing notice, he did not appear at the hearing.  Respondent's Exhibit V shows that Mr. Lackey, not respondent, received the electronic hearing notice.

Respondent's credible explanation rebuts plaintiff's argument that respondent's failure to appear for the hearing was evidence that the elder abuse claim was filed maliciously or in bad faith. Given that respondent knew that Mr. Lackey was apparently unreliable and failing to keep abreast of the case, respondent should have taken affirmative steps to investigate whether a hearing had been set. However, the Washington County court has already awarded sanctions in plaintiff's favor as a result of respondent's failure to appear: the elder abuse claim was dismissed with prejudice, and plaintiff was awarded his attorney fees. Additional sanctions are not warranted on this basis.

CONCLUSION

Plaintiff testified convincingly that the elder abuse litigation negatively impacted his life in a multitude of ways, and this court is sympathetic to his circumstances. Although this court is convinced that the elder abuse claim lacked objective merit, sanctions under the court's inherent authority should be levied with "restraint and discretion" and are reserved for the "rare and exceptional" case.

Notwithstanding respondent's missteps, given the procedural twists and turns of this case and the fact that the Washington County court awarded attorney fees, this is not that rare and exceptional case. The Motion for Reconsideration will be denied. The court will enter a separate order.

Very truly yours,

Elizabeth L. Perris
Bankruptcy Judge